Case 1:08-cv-01103   Document 1   Filed 02/22/2008   KC   Page 1 of 11

FILED
FEBRUARY 22, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 1103

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee,   Plaintiffs,   v.   AUFFENBERG FORD, INC., an Illinois corporation,   Defendant. | Case No.   District Judge  **JUDGE GETTLEMAN**   Magistrate Judge  **MAGISTRATE JUDGE NOLAN** |

## COMPLAINT

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and Howard McDougall, one of its present trustees, for their cause of action against Defendant Auffenberg Ford, Inc., an Illinois corporation ("Auffenberg") allege as follows:

### JURISDICTION AND VENUE

1.   This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA") and is a suit to recover employer contributions owed to the trustees of the Pension Fund by Defendant Auffenberg.

2.   This Court has jurisdiction over this action pursuant to §§ 502(e) and 502(f) of ERISA, 29 U.S.C. §§1132(e) and 1132(f).

3.   The Pension Fund is administered in its principal place of business located in Rosemont, Illinois.  Venue is proper in this District under Sections 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).  Venue is also proper in this District under the forum selection clause of the Pension Fund Trust Agreement ("Trust Agreement").

## PARTIES AND RELATIONSHIP

4. Plaintiff Pension Fund is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37) and an employee benefit plan within the meaning of 3(3) of ERISA, 29 U.S.C. §1002(3).

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of those employees of those same employers.

6. All principal and income from such contributions and investments thereof are held and used for the exclusive purpose of providing benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses that arise therefrom.

7. Plaintiff Howard McDougall is a trustee and a "fiduciary" of the Pension Fund within the meaning of §3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). The trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois 60018.

8. Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), the trustees, including Plaintiff Howard McDougall, are authorized to bring this action on behalf of the Pension Fund, its participants, and beneficiaries.

9. Defendant Auffenberg is an Illinois corporation and an "employer" and a "party-in-interest" as those terms are defined, respectively, by §§3(5) and 3(14)(c) of ERISA, 29 U.S.C. §§1002(5) and 1002(14)(c).

10. Local Union No. 50 ("Local 50") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of Auffenberg and employees of other employers in industries affecting interstate commerce.

## CERTAIN RELEVANT BACKGROUND EVENTS

11. Auffenberg entered into and agreed to be bound by a collective bargaining agreement with Local 50, pursuant to which Auffenberg agreed to pay contributions to the Pension Fund on behalf of covered employees which consist of: a) Working Parts Department Managers, b) Parts Department Countermen, c) Journeymen Parts Department, Stockmen and Warehousemen and d) Utility Employees. (the "CBA").

12. The duration clause of the CBA provided in part as follows:

> All of the terms and provisions of this contract shall be continued in full force and effect and extended from the termination date hereof to such time as the parties either enter into a new Agreement, or Agreement containing the desired modifications, or terminate further negotiations in the manner above mentioned.

13. The CBA remained in effect until at least January 31, 2007 when a replacement collective bargaining agreement was signed by Auffenberg and Local 50 that eliminated the duty to contribute to the Pension Fund.

14. Auffenberg entered into a Participation Agreement with Local 50 that requires Auffenberg to pay contributions to the Pension Fund.

15. Paragraph 5 of the Participation Agreement provides:

> This Agreement and the obligation to pay contributions to the Fund(s) will continue after the termination of a collective bargaining agreement and during a strike except no contributions shall be due during a strike unless the Union and the Employer mutually agree In writing otherwise. This

Agreement and the Employer's obligation to pay contributions shall not terminate until either a) the Trustees decide to terminate the Agreement and provide written notice of their decision to the Employer or b) the Employer is no longer obligated by a contract or statute to contribute to the Fund(s) and the Fund(s) have received a written notice directed to the Fund(s)' Contracts Department at the address specified above sent by certified mail with return receipt requested which describes the reason why the Employer is no longer obligated to contribute.  In the event the Employer participates in both the Pension Fund and the Health and Welfare Fund and the termination referred to in a) or b) relates to only one Fund, then this Agreement shall remain in effect with respect to the other Fund.

16. Paragraph 6 of the Participation Agreement provides:

When a new collective bargaining agreement is signed or the Employer and the Union agree to change the collective bargaining agreement, the Employer shall promptly submit the entire agreement or modification to the Fund(s)' Contracts Department by certified mail (return receipt requested) at the address specified above.  Any agreement or understanding which affects the Employer's contribution obligation which has not been submitted to the Fund(s) as required by this paragraph, shall not be binding on the Trustees and this Agreement and the written agreement(s) that has been submitted to the Fund(s) shall alone remain enforceable.

17. Paragraph 10 of the Participation Agreement provides:

The Employer shall provide the Trustees with access to its payroll records and other pertinent records when requested by the Fund(s).  If litigation is required to either obtain access to the Employer's records or to collect additional billings that result from the review of the records, all costs incurred by the Fund(s) in conducting the review shall be paid by the Employer and the Employer shall pay any attorneys' fees and costs incurred by the Fund(s).

18. Paragraph 12 of the Participation Agreement provides:

The Employer acknowledges that it is aware of the Fund(s)' adverse selection rules (Including Special Bulletin 90-7) and

agrees that while this Agreement remains in effect, it will not enter into any agreement that violates the adverse selection rules.

A true copy of Special Bulletin 90-7 is attached hereto as Exhibit A.

19. Auffenberg also agreed to be bound by the Trust Agreement, which requires Auffenberg to "make continuing and prompt payments to the [Pension] Fund as required by applicable collective bargaining agreements."

20. Article III, Section 1 of the Trust Agreement provides as follows in part:

Each employer shall remit continuing and prompt contributions to the Trust Fund as required by the applicable collective bargaining agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority. . . . Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:

Contracts Department
Central States, Southeast and
Southwest Areas Pension Fund
9377 West Higgins Road
Rosemont, Illinois 60018-4938

Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not be disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the collective bargaining agreement which alone shall be enforceable. The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in the

case of strike after contract termination, unless the parties mutually agree otherwise.

21.    The Pension Fund did not receive the notice of termination required by paragraph 5 of the Participation Agreement and Article III, Section 1 of the Trust Agreement until February 10, 2007, so Auffenberg was obligated to contribute to the Pension Fund until February 10, 2007 under the Participation Agreement and the Trust Agreement.

22.    The Pension Fund relies upon participating employers to self-report the work history of eligible employees in order to prepare a monthly bill and determine benefit eligibility.

23.    The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks and/or days worked by the eligible employees.

24.    Auffenberg reported the work history of some of its employees to the Pension Fund through April 30, 2006, the date upon which Auffenberg alleges its contribution obligation to the Pension Fund ceased. Auffenberg paid contributions to the Pension Fund based upon the work history it reported to the Pension Fund for the period through April 30, 2006.

25.    Pursuant to the Trust Agreement, the Pension Fund is permitted to audit payroll records of participating employers in order to verify the accuracy and completeness of the reported employee work history submitted as part of the self-reporting system.

26. The Pension Fund audited Auffenberg's records for the period May 1, 2001 through February 10, 2007 to verify the accuracy and completeness of employee work history reported to the Pension Fund by Auffenberg, pursuant to the CBA.

27. The Pension Fund's audit revealed that Auffenberg had not accurately reported the work history of employees performing work covered under the CBA.

28. Auffenberg has advised the Pension Fund that all or virtually all of the audit billing is not owed because Auffenberg entered into a second collective bargaining agreement with Local 50 that covered the same job classifications as the CBA, but contemplated contributions on behalf of employees to a section 401(k) plan instead of the Pension Fund (the "401(k) CBA"). Auffenberg claims the employees included in the audit billing were covered by the 401(k) CBA so no contributions are due on their behalf to the Pension Fund.

29. The Pension Fund was not provided with written notice of the 401(k) CBA prior to March 2007.

30. The Pension Fund was not provided with oral notice of the 401(k) CBA prior to March 2007.

31. The 401(k) CBA is not binding on the Pension Fund because a) it was not disclosed to Pension Fund until 2007 and b) it violates the Pension Fund's adverse selection rule. As a result, the Pension Fund is entitled to contributions on behalf of all of the employees who were supposedly covered by the 401(k) CBA.

32. Article XIV, Section 12 of the Trust Agreement provides:

> An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records

that are requested in connection with an audit and/or if litigation is required to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

33. Article XV, Section 4 of the Trust Agreement provides, in part, that:

Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an employer for contributions or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions or withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

## STATUTORY AUTHORITY

34. ERISA §515, 29 U.S.C. §1145 provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

35. ERISA §502(g)(2), 29 U.S.C. §1132(g)(2), provides that:

> (2) In any action under this title by a fiduciary for or on behalf of a plan to enforce §515 in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of –
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under §6621 of the Internal Revenue Code of 1954.

## STATUTORY AND CONTRACTUAL VIOLATIONS

36. Auffenberg has breached the provisions of ERISA, the collective bargaining agreement, the Participation Agreement the Trust Agreement and the Pension Fund rules by a) by failing to pay any contributions (and interest due thereon) owed to the Pension

Fund for the period of May 1, 2006 through February 10, 2007 and b) by failing to pay contributions (and interest due thereon) for the period of May, 2001 through February 10, 2007 on behalf of the employees allegedly covered by the 401(k) CBA.

37.   Auffenberg owes to the Pension Fund in excess of $203,358.82 for unpaid contributions and accumulated interest through February 29, 2008 as a result of the conduct set forth in paragraph 36.

**WHEREFORE**, Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, trustee, request the following relief against Defendant Auffenberg Ford, Inc., an Illinois corporation:

(a)   A judgment against Auffenberg in favor of the Pension Fund for all contributions that are owed from May 1, 2001 through February 10, 2007 plus the greater of double interest or single interest plus liquidated damages and all attorneys' fees and costs incurred by the Pension Fund in connection with this action and the audit fees and costs incurred in connection with the Pension Fund's audit;

(b)   Post-judgment interest at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged;

(c)   That this Court retain jurisdiction pending compliance with its orders; and

    (d)    Such further or different relief as the Court may deem proper and just.

Respectfully submitted,

/s/ Laura B. Bacon
Laura B. Bacon
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Pension Fund
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois  60018-4938
(847) 518-9800, Ext. 3704
ARDC # 6288982
lbacon@centralstatesfunds.org