## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and HOWARD McDOUGALL, Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>AUFFENBERG FORD, INC.,<br><br>Defendant. | Case No. 08 C 1103<br><br>Judge Gettleman<br><br>Magistrate Judge Nolan |

## ANSWER AND DEFENSES

**NOW COMES** Defendant Auffenberg Ford, Inc., by and through its counsel, and for its Answer and Defenses, states as follows:

## JURISDICTION AND VENUE

1.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA") and is a suit to recover employer contributions owed to the trustees of the Pension Fund by Defendant Auffenberg.

**ANSWER:   Defendant admits the basis upon which Plaintiffs bring this suit, but denies that Plaintiffs are entitled to any relief.**

2.    This Court has jurisdiction over this action pursuant to §§ 502(e) and 502(f) of ERISA, 29 U.S.C. §§1132(e) and 1132(f).

**ANSWER:   Defendant admits that this Court has jurisdiction over Plaintiffs' claims, but denies that Plaintiffs are entitled to any relief.**

3.    The Pension Fund is administered in its principal place of business located in Rosemont, Illinois. Venue is proper in this District under Sections 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2). Venue is also proper in this District under the forum selection clause of the Pension Fund Trust Agreement ("Trust Agreement").

**ANSWER: Defendant admits the allegations contained in Paragraph 3.**

### PARTIES AND RELATIONSHIP

4.    Plaintiff Pension Fund is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37) and an employee benefit plan within the meaning of 3(3) of ERISA, 29 U.S.C. §1002(3).

**ANSWER: Defendant admits the allegations contained in Paragraph 4.**

5.    The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective

bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of those employees of those same employers.

**ANSWER: Defendant admits the allegations contained in Paragraph 5.**

6.    All principal and income from such contributions and investments thereof are held and used for the exclusive purpose of providing benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses that arise therefrom.

**ANSWER: Defendant has insufficient information to form an accurate response to  the allegations contained in Paragraph 6. Defendant, therefore, denies the allegations contained in Paragraph 6.**

7.    Plaintiff Howard McDougall is a trustee and a "fiduciary" of the Pension Fund within the meaning of §3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). The trustees administer the Pension Fund at 9377 West Higgins Road, Rosemont, Illinois 60018.

**ANSWER: Defendant admits the allegations contained in Paragraph 7.**

8.    Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), the trustees, including Plaintiff Howard McDougall, are authorized to bring this action on behalf of the Pension Fund, its participants, and beneficiaries.

**ANSWER: Defendant admits the allegations contained in Paragraph 8.**

9.    Defendant Auffenberg is an Illinois corporation and an "employer" and a "party-in-interest" as those terms are defined, respectively, by §§3(5) and 3(14)(c) of ERISA, 29 U.S.C. §§1002(5) and 1002(14)(c).

**ANSWER: Defendant admits the allegations contained in Paragraph 9.**

10.    Local Union No. 50 ("Local 50") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of Auffenberg and employees of other employers in industries affecting interstate commerce.

**ANSWER: Defendant admits the allegations contained in Paragraph 10.**

## CERTAIN RELEVANT BACKGROUND EVENTS

11.    Auffenberg entered into and agreed to be bound by a collective bargaining agreement with Local 50, pursuant to which Auffenberg agreed to pay contributions to the Pension Fund on behalf of covered employees which consist of: a) Working Parts Department Managers, b) Parts Department Countermen, c) Journeymen Parts Department, Stockmen and Warehousemen and d) Utility Employees (the "CBA").

**ANSWER**: Defendant admits that Auffenberg Lincoln Mercury/Ford entered into a collective bargaining agreement with International Brotherhood of Teamsters Local Union No. 50 ("Local 50") which became effective May 1, 2001 and had an expiration date of April 30, 2006 and that collective bargaining agreement covered as Class A - Employees Working Parts Department Managers, as Class A-1 - Employees Parts Department Countermen, as Class A-2 - Employees Journeymen Parts Department, Stockmen and Warehousemen Employees and as Class B - Employees Utility Employees. Defendant denies all of the remaining allegations contained in Paragraph 11.

12.    The duration clause of the CBA provided in part as follows:

> All of the terms and provisions of this contract shall be continued in full force and effect and extended from the termination date hereof to such time as the parties either enter into a new Agreement, or Agreement containing the desired modifications, or terminate further negotiations in the manner above mentioned.

**ANSWER**: Defendant admits that Auffenberg Lincoln Mercury/Ford entered into a collective bargaining agreement with Local 50 which became effective May 1, 2001 and had an expiration date of April 30, 2006 and that Section 3(ii) of Article 33 of that collective bargaining agreement contained a clause identical to that stated in Paragraph 12 of Plaintiffs' Complaint. Defendant denies all of the remaining allegations contained in Paragraph 12.

13.    The CBA remained in effect until at least January 31, 2007 when a replacement collective bargaining agreement was signed by Auffenberg and Local 50 that eliminated the duty to contribute to the Pension Fund.

**ANSWER**: **Defendant admits that Auffenberg Lincoln Mercury/Ford entered into a new collective bargaining agreement with Local 50 which became effective May 1, 2006 has an expiration date of April 30, 2011 and that the collective bargaining agreement does not include an obligation for the employer to make contributions to Central States Southeast and Southwest Areas Pension Fund ("Pension Fund"). Defendant denies all of the remaining allegations contained in Paragraph 13.**

14.    Auffenberg entered into a Participation Agreement with Local 50 that requires Auffenberg to pay contributions to the Pension Fund.

**ANSWER**: **Defendant admits that Auffenberg Lincoln-Mercury entered into a Participation Agreement with the Pension Fund that the Pension Fund's Contract Department received on September 25, 2001. Defendant denies Plaintiff's characterization of the obligations imposed by the Participation Agreement and, therefore, denies the remaining allegations contained in Paragraph 14.**

15.    Paragraph 5 of the Participation Agreement provides:

This Agreement and the obligation to pay contributions to the Fund(s) will continue after the termination of a collective bargaining agreement and during a strike except no contributions shall be due during a strike unless the Union and the Employer mutually agree In writing otherwise. This Agreement and the Employer's obligation to pay contributions shall not terminate until either a) the Trustees decide to terminate the Agreement and provide written notice of their decision to the Employer or b) the Employer is no longer obligated by a contract or statute to contribute to the Fund(s) and the Fund(s) have received a written notice directed to the Fund(s)' Contracts Department at the address specified above sent by certified mail with return receipt requested which describes the reason why the Employer is no longer obligated to contribute. In the event the Employer participates in both the Pension Fund and the Health and Welfare Fund and the termination referred to in a) or b) relates to only one Fund, then this Agreement shall remain in effect with respect to the other Fund.

**ANSWER: Defendant admits that Auffenberg Lincoln-Mercury entered into a Participation Agreement with the Pension Fund that the Pension Fund's Contract Department received on September 25, 2001 and that Plaintiffs have accurately quoted a portion of that Participation Agreement. Defendant denies the remaining allegations contained in Paragraph 15.**

16.    Paragraph 6 of the Participation Agreement provides:

When a new collective bargaining agreement is signed or the Employer and the Union agree to change the collective bargaining agreement, the Employer shall promptly submit the entire agreement or modification to the

Fund(s)' Contracts Department by certified mail (return receipt requested) at the address specified above. Any agreement or understanding which affects the Employer's contribution obligation which has not been submitted to the Fund(s) as required by this paragraph, shall not be binding on the Trustees and this Agreement and the written agreement(s) that has been submitted to the Fund(s) shall alone remain enforceable.

**ANSWER: Defendant admits that Auffenberg Lincoln-Mercury entered into a Participation Agreement with the Pension Fund that the Pension Fund's Contract Department received on September 25, 2001 and that Plaintiffs have accurately quoted a portion of that Participation Agreement. Defendant denies the remaining allegations contained in Paragraph 16.**

17.    Paragraph 10 of the Participation Agreement provides:

The Employer shall provide the Trustees with access to its payroll records and other pertinent records when requested by the Fund(s). If litigation is required to either obtain access to the Employer's records or to collect additional billings that result from the review of the records, all costs incurred by the Fund(s) in conducting the review shall be paid by the Employer and the Employer shall pay any attorneys' fees and costs incurred by the Fund(s).

**ANSWER: Defendant admits that Auffenberg Lincoln-Mercury entered into a Participation Agreement with the Pension Fund that the Pension Fund's Contract Department received on September 25, 2001 and that Plaintiffs have accurately quoted a portion of that**

**Participation Agreement.   Defendant denies the remaining allegations contained in Paragraph 17.**

18.   Paragraph 12 of the Participation Agreement provides:

> The Employer acknowledges that it is aware of the Fund(s)' adverse selection rules (Including Special Bulletin 90-7) and agrees that while this Agreement remains in effect, it will not enter into any agreement that violates the adverse selection rules.

A true copy of Special Bulletin 90-7 is attached hereto as Exhibit A.

**ANSWER:  Defendant admits that Auffenberg Lincoln-Mercury entered into a Participation Agreement with the Pension Fund that the Pension Fund's Contract Department received on September 25, 2001 and that Plaintiffs have accurately quoted a portion of that Participation Agreement.   Defendant denies the remaining allegations contained in Paragraph 18.**

19.   Auffenberg also agreed to be bound by the Trust Agreement, which requires Auffenberg to "make continuing and prompt payments to the [Pension] Fund as required by applicable collective bargaining agreements."

**ANSWER:  Defendant admits that Auffenberg Lincoln Mercury/Ford entered into a collective bargaining agreement with Local 50 which became effective May 1, 2001 and had an expiration**

**date of April 30, 2006 in which Auffenberg Lincoln Mercury/Ford agreed to make contributions to the Pension Fund. Defendant admits that Auffenberg Lincoln-Mercury entered into a Participation Agreement with the Pension Fund that the Pension Fund's Contract Department received on September 25, 2001. Defendant denies Plaintiffs' characterization of the obligations imposed by the Trust Agreements and, therefore, denies the remaining allegations contained in Paragraph 19.**

20.    Article III, Section 1 of the Trust Agreement provides as follows in part:

> Each employer shall remit continuing and prompt contributions to the Trust Fund as required by the applicable collective bargaining agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority. . . . Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:

> Contracts Department
> Central States, Southeast
> and Southwest Areas
> Pension Fund 9377 West
> Higgins Road
> Rosemont, Illinois 60018-4938

> Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement shall be submitted promptly to the

Fund In the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not be disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the collective bargaining agreement which alone shall be enforceable. The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in the case of strike after contract termination, unless the parties mutually agree otherwise.

**ANSWER: Defendant admits that Plaintiffs have accurately quoted a portion of the Pension Fund Agreement referred to in Paragraph 20 of Plaintiffs' Complaint. Defendant denies the remaining allegations contained in Paragraph 20.**

21.    The Pension Fund did not receive the notice of termination required by paragraph 5 of the Participation Agreement and Article Ill, Section 1 of the Trust Agreement until February 10, 2007, so Auffenberg was obligated to contribute to the Pension Fund until February 10, 2007 under the Participation Agreement and the Trust Agreement.

**ANSWER: Defendant denies the allegations contained in Paragraph 21.**

22.    The Pension Fund relies upon participating employers to self-report the work history of eligible employees in order to prepare a monthly bill and determine benefit eligibility.

**ANSWER**: Defendant admits the allegations contained in Paragraph 22.

23.    The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks and/or days worked by the eligible employees.

**ANSWER**: Defendant admits the allegations contained in Paragraph 23.

24.    Auffenberg reported the work history of some of its employees to the Pension Fund through April 30, 2006, the date upon which Auffenberg alleges its contribution obligation to the Pension Fund ceased. Auffenberg paid contributions to the Pension Fund based upon the work history it reported to the Pension Fund for the period through April 30, 2006.

**ANSWER: Defendant admits that Auffenberg Lincoln Mercury/Ford reported the work history of employees with respect to their work for which Auffenberg Lincoln Mercury/Ford had an obligation to contribute to the Pension Fund pursuant to its collective bargaining agreement with Local 50. It did so for work performed for which contributions were required through April 30, 2006 and paid contributions due with respect to those employees and such work. Defendant denies the remaining allegations contained in Paragraph 24.**

25.    Pursuant to the Trust Agreement, the Pension Fund is permitted to audit payroll records of participating employers in order to verify the accuracy and completeness of the reported employee work history submitted as part of the self-reporting system.

**ANSWER: Defendant admits the allegations contained in Paragraph 25.**

26.    The Pension Fund audited Auffenberg's records for the period May 1, 2001 through February 10, 2007 to verify the accuracy and completeness of employee work history reported to the Pension Fund by Auffenberg, pursuant to the CBA.

**ANSWER:   Defendant admits that the Pension Fund performed an audit of records for the period May 1, 2001 through February 10, 2007.   Defendant  denies all of the remaining allegations contained in Paragraph 26.**

27.    The Pension Fund's audit revealed that Auffenberg had not accurately reported the work history of employees performing work covered under the CBA.

**ANSWER: Defendant denies the allegations contained in Paragraph 27.**

28.    Auffenberg has advised the Pension Fund that all or virtually all of the audit billing is not owed because Auffenberg entered into a

second collective bargaining agreement with Local 50 that covered the same job classifications as the CBA, but contemplated contributions on behalf of employees to a section 401(k) plan instead of the Pension Fund (the "401(k) CBA"). Auffenberg claims the employees included in the audit billing were covered by the 401(k) CBA so no contributions are due on their behalf to the Pension Fund.

**ANSWER:  Defendant admits that it has advised the Pension Fund that all or virtually all of the audit billing was not owed because the contributions claimed by the audit pertained to employees covered by a separate collective bargaining agreement between Auffenberg Ford, not Auffenberg Lincoln Mercury/Ford and Local 50 which bargaining agreement did not require contributions to the Pension Fund, but contemplated contributions on behalf of employees to a section 401(k) plan instead.  Defendant admits that it advised the Pension Fund that employees included in the audit billing were not covered by a collective bargaining agreement for which contributions were due to the Pension Fund.  Defendant denies all of the remaining allegations contained in Paragraph 28.**

29.    The Pension Fund was not provided with written notice of the 401(k) CBA prior to March 2007.

**ANSWER:  Defendant denies that any written notice was due to the Pension Fund reporting that a collective bargaining agreement did not contain an obligation to contribute to the Pension Fund and Defendant denies that the Pension Fund was not provided with notice in any event.  Defendant, therefore, denies the allegations contained in Paragraph 29.**

30.    The Pension Fund was not provided with oral notice of the 401(k) CBA prior to March 2007.

**ANSWER:  Defendant denies the allegations contained in Paragraph 30.**

31.    The 401(k) CBA is not binding on the Pension Fund because a) it was not disclosed to Pension Fund until 2007 and b) it violates the Pension Fund's adverse selection rule. As a result, the Pension Fund is entitled to contributions on behalf of all of the employees who were supposedly covered by the 401(k) CBA.

**ANSWER:  Defendant denies the allegations contained in Paragraph 31.**

32.    Article XIV, Section 12 of the Trust Agreement provides:

> An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

**ANSWER:** **Defendant admits that Plaintiffs have accurately quoted a portion of the Pension Fund Trust Agreement referred to in Paragraph 32 of Plaintiffs' Complaint. Defendant denies the remaining allegations contained in Paragraph 32.**

33.     Article XV, Section 4 of the Trust Agreement provides, in part, that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an employer for contributions or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions or withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for

the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

**ANSWER: Defendant admits that Plaintiffs have accurately quoted a portion of the Pension Fund Trust Agreement referred to in Paragraph 33 of Plaintiffs' Complaint. Defendant denies the remaining allegations contained in Paragraph 33.**

## STATUTORY AUTHORITY

34.    ERISA §515, 29 U.S.C. §1145 provides that:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

**ANSWER: Defendant admits that 29 U.S.C. §1145 reads as reproduced in Paragraph 34.**

35.    ERISA §502(g)(2), 29 U.S.C. §1132(g)(2), provides that

(2) In any action under this title by a fiduciary for or on behalf of a plan to enforce §515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

(A)    the unpaid contributions,

(B)    interest on the unpaid contributions,

(C)    an amount equal to the greater of –

(i)    interest on the unpaid contributions, or

(ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under §6621 of the Internal Revenue Code of 1954.

**ANSWER:  Defendant admits that 29 U.S.C. §1132(g)(2) reads as reproduced in Paragraph 35.**

## STATUTORY AND CONTRACTUAL VIOLATIONS

36.    Auffenberg has breached the provisions of ERISA, the collective bargaining agreement, the Participation Agreement the Trust Agreement and the Pension Fund rules by a) by failing to pay any contributions (and interest due thereon) owed to the Pension Fund for the period of May 1, 2006 through February 10, 2007 and b) by failing to pay contributions (and interest due thereon) for the period of May, 2001 through February 10, 2007 on behalf of the employees allegedly covered by the 401(k) CBA.

**ANSWER: Defendant denies the allegations contained in Paragraph 36.**

37.   Auffenberg owes to the Pension Fund in excess of $203,358.82 for unpaid contributions and accumulated interest through February 29, 2008 as a result of the conduct set forth in paragraph 36.

**ANSWER: Defendant denies the allegations contained in Paragraph 37.**

**38.   To the extent that any of the allegations contained in Plaintiffs' Complaint have not been admitted specifically herein, Defendant denies the allegations.   Defendant denies that Plaintiffs are entitled to any relief as a result of this Complaint and denies they are entitled to recover and judgment or costs and attorneys fees pursuant to ERISA  or otherwise.**

**DEFENSES**

Defendant asserts the following affirmative and other defenses to Plaintiffs' Complaint:

**FIRST DEFENSE**

Plaintiffs have failed to state a cause of action for which relief can be granted.

**SECOND DEFENSE**

Defendants have completely satisfied any contribution delinquency sought in this litigation for all periods prior to and through April 30, 2006. In that regard, Plaintiffs actually paid and tendered payment to Plaintiffs, prior to commencement of this lawsuit, of the full amount of contributions

and interest that Plaintiffs identified as being due by pursuant to their audit described in Paragraphs 26 and 27 of Plaintiffs' Complaint for all periods prior to April 30, 2006.     Accordingly, Plaintiffs' Complaint fails in that regard because no liability exists and under the principles of accord and satisfaction.

### THIRD DEFENSE

Plaintiffs have failed to satisfy contractual conditions precedent, as established in relevant collective bargaining agreements, participation agreements and the Pension Fund Trust Agreement, to any entitlement to contributions or relief that Plaintiffs seek to have enforced against or imposed upon Defendant for periods after April 30, 2006.   No contribution obligation exists for periods after April 30, 2006 because the obligation under any collective bargaining agreements that Plaintiffs seek to have enforced may have existed ended on April 30, 2006.

### FOURTH DEFENSE

Plaintiffs have no entitlement to collect contributions, or receive relief, sought in this case after April 30, 2006 because no further collective bargaining obligation, or obligation pursuant to any agreement or otherwise, existed for Defendant, or other any other entities, to make contributions for periods beyond April 30, 2006 and the employer whose obligation ended under such agreements provided timely notice – as specified in relevant

Participation Agreements and the Pension Fund Trust Agreement – of the cessation of such contribution obligation.

### FIFTH DEFENSE

Plaintiffs have no entitlement to collect contributions, or receive the relief, sought in this case because the employees and collective bargaining unit(s) with respect to whom and with respect to whose work contributions are sought in this litigation, for all the time periods in issue and including after April 30, 2006, were not performing any work within the scope of a collective bargaining unit and agreement pursuant to which a contribution obligation from Defendant existed.

### SIXTH DEFENSE

Plaintiffs have no entitlement to collect contributions, or receive the relief, sought in this case from Defendant because the employees with respect to whom contributions are sought in this litigation were not covered by a collective bargaining agreement or any other agreement, for the time periods in issue and including after April 30, 2006, which obligated Defendant to make contributions to Plaintiff Pension Fund.

### SEVENTH DEFENSE

Any contributions which Plaintiffs seek to recover in this action from Defendant are barred by relevant provisions of the Labor Management Relations Act ("LMRA") and National Labor Relations Act, and specifically

Section 302(c) of the LMRA, because: (a) no work was performed within the jurisdiction of a collective bargaining agreement pursuant to which a contribution obligation existed for the periods and persons in issue, particularly after April 30, 2006, (b) contributions are being sought for persons who were not employees of an employer who was a participating employer in Plaintiff Pension Fund with respect to the persons in issue for the time periods specified, and including after April 30, 2006.

## EIGHTH DEFENSE

Plaintiffs' claims fail because they have named as Defendant the improper party and have failed to join indispensable parties to this action without whose presence in this case appropriate and complete relief cannot be given.

WHEREFORE, Defendant, Auffenberg Ford, Inc., respectfully requests that this Court enter judgment in its favor and against Plaintiffs, award Defendant its costs and attorneys' fees incurred in the defense of this action pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and grant Defendant such other relief as this court deems appropriate.

Dated:  March 31, 2008          Respectfully submitted,

**AUFFENBERG FORD, INC.**

/s/Stanley G. Schroeder
THE LOWENBAUM PARTNERSHIP
Stanley G. Schroeder, App. Pending
R. Michael Lowenbaum, App. Pending
222 South Central Avenue, Suite 901
St. Louis, MO 63105
Main (314) 863-0092
Direct (314) 746-4835
(314) 746-4848 (facsimile)
sschroeder@lowenbaumlaw.com
rlowenbaum@lowenbaumlaw.com


/s/Donald J. Vogel
SCOPELITIS, GARVIN, LIGHT, HANSON
& FEARY
Donald J. Vogel, ARDC #6191438
Sara L. Pettinger, ARDC #6204647
30 West Monroe Street, Suite 600
Chicago, IL 60603
Main (312) 255-7200
Direct (312) 255-7278
Fax (312) 422-1224

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, Donald J. Vogel, hereby certify that on March 31. 2008, a copy of the foregoing Answer and Affirmative Defenses was filed electronically. Notice of this filing will be sent to the following individuals by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Laura C. Bacon, Esq.
Central States Funds Law Department
9377 W. Higgins Road
Rosemont, Illinois 60018-4938
lbacon@centralstatesfunds.org


/s/Donald J. Vogel